### BIRD & CO. v. KENDALL.

1. PLEADINGS.—USURY will not be considered unless raised by pleadings, and is a plea personal to mortgagor and cannot be interposed by others.

2. USURY.—B. & L. ASSN. cannot be required by junior mortgagee to credit dues, usurious interest, premiums and fines received by it from borrower on his debt in absence of stipulations to that effect in the contract.

3. B. & L. ASSN.—DEBTOR AND CREDITOR.—When a member of a B. & L. Assn. borrows money therefrom, pledging his stock to secure its payment, he practically ceases to be a member of the association, and the relation between him and the association is that of debtor and creditor.

4. ATTORNEY'S FEES.—In foreclosure by junior mortgagee against mortgagor and senior mortgagee, provision for attorney's fees applies, and they are properly included in amount due senior mortgagee.

Before TOWNSEND, J., Richland, January, 1900. Affirmed.

Foreclosure by William M. Bird & Co. against F. D. Kendall, Georgia State Building and Loan Association *et al.* The Circuit decree, omitting formal parts, is as follows:

"This is an action brought by the plaintiffs, the holders of a junior incumbrance, against F. D. Kendall, the mortgagor, to which action prior incumbrances and also subsequent incumbrances are made parties. The cause was referred to the master of Richland County, by an order of reference of date October 16, 1900, 'to compute the amount due upon the plaintiff's mortgage and judgments, and to ascertain and report the amount due upon the several liens set up in the answers, together with their priorities, with leave to report

any special matter.' The master made his report and the matter came on to be heard before me upon various exceptions to the master's report. These exceptions all raise practically one question, namely, what is the amount properly due by the defendant, F. D. Kendall, to his codefendant, the Georgia State Building and Loan Association. There was no contest as to the order of the priority of the several liens set up in the pleadings and offered in evidence, and there were no exceptions to the master's report upon this question, which report sets forth the respective rank and priority of the various liens upon the mortgaged premises. The nature and character of the contract entered into by and between F. D. Kendall and the Georgia State Building and Loan Association, and the proper method of calculating what is due under that contract, as against the rights of the plaintiffs and certain of the defendants as subsequent incumbrances, and the question of the right of said association to charge an attorney's fee under its mortgage, were the questions argued before me. The arguments on both sides were full and elaborate. I find the following facts: On December 28, 1894, the defendant, Kendall, became a member of the Georgia State Building and Loan Association, and, having paid the membership fee required, received from the association a certificate for fifty shares, the matured value of each share being $100 (see exhibit 9), under the terms of which he agreed to pay to the association '60 cents per month, for each share held, until such share matures or is withdrawn.' The certificate provides that whenever the monthly payments on any shares, together with the profits apportioned to such shares, amount to $100 per share, the holder shall be entitled to withdraw $100 per share upon the surrender of his certificate; and it also provides for ascertaining the value of the stock in case of withdrawal at any time before maturity. On June 26, 1895, Kendall obtained an advance or loan of $5,000 from said association upon said fifty shares of stock, which shares were thereupon assigned over and delivered to said association; and at the

same time, and as additional security, Kendall made and executed his bond in the penal sum of $10,000, in which it is recited that Kendall is the holder of said fifty shares of stock upon which he has obtained an advance of $5,000, subject to the by-laws, rules and regulations of said association, the condition of the bond being that he 'shall well and truly pay, or cause to be paid, to the said association, on or before the last Saturday in each and every month, until the said stock shall mature to the par value of $100 per share, the sum of $30 as instalments upon said stock, and the further sum of $50 as interest and premium on said advance, etc.' (exhibit 7) ; and, at the same time, made and executed a mortgage upon the property on Plain street, in city of Columbia, mentioned in the complaint. The mortgage recites the condition of the bond as above set forth, and proceeds : 'Said bond being distinctly made and to be construed according to the statutes and laws of the State of Georgia, and the final settlement of said advance *at the time of maturity of said stock* to be based upon the repayment of said advance, with interest not to exceed the rate of eight per cent. per annum.' The mortgage further provides : 'Upon condition, nevertheless, that if the said party of the first part shall well and truly comply with and perform all the covenants and conditions in the said bond mentioned, according to the by-laws, rules and regulations of said association, then this present indenture, as well as the said obligation, shall be void ; else to remain of full force and virtue. But if the said party of the first part shall for the space of three successive months during the period to maturity of said stock fails or refuses to pay the instalments on the same, or the interest and premium as stipulated in the said bond, or shall further fail to insure, or keep insured, the improvements on said premises, or shall fail to pay promptly all taxes and assessments which may be chargeable against said premises, or any part thereof, that then and from thenceforth, in the option of the said party of the second part, it shall and may be lawful for the said party of the second part

to treat the entire debt due and payable, and it may grant, bargain, sell and dispose of the said hereby granted premises, and all benefit and equity of redemption of the said party of the first part therein, according to the directions of the act of the legislature of the State of South Carolina in that case made and provided, rendering the overplus of the purchase money to be obtained for the same, after full satisfaction of the principal and interest to be due on said obligation in manner aforesaid, and the charges of advertisement and sale and foreclosing the same, and ten per cent. upon the amount of indebtedness recovered in such proceedings as attorney's fees and commissions (if any overplus there shall be), unto the said party of the first part, his heirs, executors, administrators or assigns' (exhibit 8). It is provided in the by-laws that borrowers shall pay a fixed premium of 50 cents per month on each $1.00 borrowed, and that the rate of interest charged shall be six per cent. per annum on the money actually loaned. By-laws, art. VII., sec. 1 (exhibit 1). The by-laws provide for two funds, to wit: the loan fund and the expense fund, and they also provide that the Class A stock (which is the class to which the stock in this case belongs) may, after a certain number of payments have been made, be withdrawn, and thereupon the holder will be entitled to the amount paid into the loan fund as dues, *i. e.,* 50 cents out of each 60 cents per month, with interest not in excess of six per cent. per annum for the average time on the said loan fund payments. By-laws, art. III., sec. 3. The same by-law provides for a withdrawal fee, which is $3.00 upon 50 shares of stock. The by-laws also provide for a fine of 10 cents per share when monthly payments are not made. By-laws, art. IV., sec. 1. The by-laws also provide that upon the repayment of loans, the withdrawal value of the stock may be applied as a credit upon the principal debt. By-laws, art. VII., sec. 14. There is no dispute as to the amounts paid by Kendall since he became a member of this association. It appears that he made 47 monthly payments of stock dues of 60 cents per share, $30, aggregating

$1,410; of which 50 cents per share, or $25 per month, went into the loan fund, aggregating $1,175; 41 monthly payments instalments of interest and premiums of $50 each, aggregating $2,050; and also payments of fines incurred under the by-laws for non-payment of dues, aggregating $115.18. The evidence shows, and I so find, that these payments were respectively applied by the association, when received by it, to the several different accounts as stated above, in accordance with the by-laws, art. VII., sec. 13. I do not see upon what principle the plaintiffs can now object to the application of the payments of the sums paid to it by Kendall. As long as Kendall complied with his contract and continued to pay his dues, the association had the right to receive the money, and it seems to me that neither Kendall nor the plaintiffs here can· now object to the application which the association then made of these funds (*Thompson* v. *Gillison,* 28 S. C., 539). The payments made by Kendall were made at various times; and, during the years 1899 and 1900, were made in varying amounts and at irregular intervals; the last amount paid by Kendall ·was the sum of $150 paid and received by the association as late as April 11, 1900, only a little more than three months before the commencement of this action, the summons and complaint having been lodged on July 19, 1900. It further appears, and I so find, that the series of stock to which the certificate issued to Kendall belongs has not matured, and said series of stock, including said certificate, has not reached the par value of $100 per share. It also appears, and I so find, that the said association, prior to this proceeding, waived any right it may have had under its contract with Kendall or under its by-laws, to declare his entire debt due and payable, and to treat him as in default. Under the express words of the bond and mortgage in this case, it is provided that the bond was distinctly made, and was to be construed according to the laws of the State of Georgia. There was no plea of usury, and no question as to usury was raised. The Georgia statute, approved October 19, 1891, was in evidence in this case. It provides,

'that no fines, interest or premiums paid on loans in any building and loan association shall be deemed usurious.'

"Let us, therefore, in the first place, ascertain what was the contract entered into by Kendall, and what was the nature of that contract.    In the first place, on December 28, 1894, Kendall subscribed to fifty shares of stock in the association, and thereupon obligated himself to pay to the association 60 cents per month for each share held, of which 50 cents went into the loan fund and 10 cents into the expense fund.    Now, what is the contract evidenced by the bond and mortgage subsequently executed on June 29, 1895? Kendall borrows the sum of $5,000 on the said 50 shares of stock, and obligates to pay the sum of $30 as instalments on said stock, and $50 as interest and premium upon the amount loaned, said payments to be made monthly until the said stock shall mature and be of the par value of $100 per share.    The mortgage further provides: * * * 'Said bond being distinctly made, and to be construed according to the statute and laws of the State of Georgia, *and the final settlement of said advance at the time of maturity of said stock* to be based upon the repayment of said advance, with interest thereon not to exceed the rate of eight per cent. per annum.'    Now, my construction of this contract is that it means that Kendall obligated himself, subject to the by-laws, rules and regulations of the association, to pay the sum of $30 as instalments on his stock, and the sum of $50 as interest and premium for each and every month until his 50 shares of stock should mature and reach the par value of $5,000; and that the clause in the mortgage above quoted, providing that the interest should not exceed the rate of eight per cent. per an..um, applies only to a final settlement at the time of the maturity of said stock.    It will be observed that the wording of the clause in question is essentially different from the wording of the bonds in the cases of *Powell* v. *Association,* 55 S. C., 316, and *Association* v. *Ouzts,* 54 S. C., 215.    The provisions in the bonds in those cases provide that no greater rate than eight per cent. shall be charged

*upon a final settlement* with the association, which has been
construed to mean a final settlement made at any time during
the life of the association; while in the case at bar it is dis-
tinctly expressed that the provision as to eight per cent. only
applies to a final settlement made *at the time of the maturity
of the stock.* I, therefore, hold that the *amount due by Ken-
dall is the sum borrowed,* to wit: $5,000, and interest and
premiums at the rate of $50 per month for the time the loan
has been running up to the commencement of this action and
the filing of the answer of the association, which was sixty-
one months, amounting to $3,050, making a total of $8,050;
from which must be deducted the aggregate amount of in-
terest and premiums paid from the date of the loan, to wit:
$2,050 (said amount having already been applied to the pay-
ment of said interest and premiums to said extent), leaving
$6,000, which amount must still further be reduced by the
withdrawal value of the borrower's stock, ascertained by the
method provided in the by-laws of the association. Sec. 3
of art. III. of the by-laws provides the method of determin-
ing the withdrawal value of a member's stock. It will be
observed that it applies to non-borrowing members as well as
to borrowing members. A non-borrowing member of this
association, whether in default or in good standing, with all
his dues fully paid, can only withdraw by receiving the ag-
gregate of his payments into the loan fund plus interest at
six per cent. for the average time. He cannot receive what
is called in this case the *book value* of his stock, to wit: the
dividends apportioned upon the books of the association.
This book value is merely the memorandum to show when
the stock matures, its maturity being such time as the aggre-
gate loan fund payments, together with the dividends appor-
tioned, amount to $100 per share. Now, it would be mani-
festly unjust to allow a defaulting member the full credit of
the dividends apportioned, while the member who carries his
stock along and pays his dues promptly must, upon with-
drawal, accept the loan fund payments, with six per cent.
interest for the average time. The application of any such

principle would result in permitting the defendant, Kendall, to take advantage of his own wrong. In my opinion, art. III., sec. 3, and art. VII., sec. 14, of the by-laws of this association show that the plain intention of those by-laws is that a member whose loan is being foreclosed should receive credit only for the withdrawal value of his stock, as determined and provided for in those by-laws. Accordingly, the withdrawal value of Kendall's stock would be the amount paid into the loan fund, to wit:

47 loan fund payments at $25................$1,175 00
To which must be added interest at 6 per cent. for

     the average time........................ 255 59
                                  $1,430 59
Less withdrawal fee..................$ 3 00
Less fines .......................... 99 82 102 82

Net balance ............................$1,327 77

    The statement would then stand as follows:

To amount of loan.........................$5,000 00
To interest and premiums from July 1,
    1895, to August 1, 1900, 61
    months, at $50................$3,050 00
Less interest and premiums paid from
    July, 1895, up to date.......... 2,050 00 1,000 00

    To balance ..........................$6,000 00
Less withdrawal value of stock August 1, 1900.. 1,327 77

To amount due August 1, 1900...............$4,672 23

My conclusion, therefore, is that the amount due upon the bond and mortgage of the association when it exercised its option to declare the debt due and payable upon the filing of its answer, after the commencement of this action, was $4,672.23, upon which amount it is entitled to interest at the rate of six per cent. per annum up to the date of this decree, making $4,796.87, which is the amount which defendant

association is entitled to recover against its codefendant, Kendall.

I fully agree with the master that the association is entitled under the terms of its mortgage to ten per cent. upon the amount recovered in this proceeding for attorney's fees, to wit: $479.68, being ten per cent. upon $4,796.87.    There is a material difference between the provision as to attorney's fees in the mortgage in the case of *Building and Loan Association* v. *McCartha,* 43 S. C., 72, and in the mortgage in the case at bar.    I think that the terms and context of the mortgage in the case at bar give notice to subsequent purchasers and creditors that the holder of the mortgage would be entitled to the attorney's fee which is claimed in this proceeding.    In the McCartha case the provision for attorney's fee is clearly confined to a case where a sale is made by mortgagee under the power contained in the mortgage, and where the deed is to be made and executed by mortgagee in the name of mortgagor pursuant to such a sale.    There is nothing in the mortgage in the McCartha case to indicate that the provision as to attorney's fee applies in the event of a proceeding in Court.    On the other hand, I think that there is enough in the mortgage in the case at bar to show that the provision as to attorney's fee applies in the event of a sale under a proceeding in Court such as the present one.    There is no provision in this mortgage, as there is in the McCartha mortgage, providing for the making and execution of a deed by mortgagee in name of mortgagor, and this strengthens the view which I have taken that, under this mortgage, a sale under order of Court in a *proceeding* for that purpose was in contemplation of the parties.    The fact that the defendant association sets up its mortgage as against a codefendant cannot affect the question (*Seibert* v. *Todd,* 31 S. C., 206; *Brayan* v. *Kay,* 33 S. C., 283).    Besides, the general rule is that a mortgage is valid against subsequent purchasers and creditors when its terms and provisions give reasonable notice of the incumbrance intended to be created (1 Jones on Mortgages, secs. 70, 345, 15 A. and E. Ency.,

2d ed., 755, 756, 758). And I hold that the terms and provisions of the mortgage in the case at bar embody reasonable notice of an attorney's fee being chargeable in a proceeding such as the present one. I think that, under the by-laws of this association, it had the right to charge fines upon a default in the payments; and I find, as a matter of fact, that the fines charged are reasonable."

From this decree the plaintiff appeals on following exceptions:

"1. Because his Honor erred in overruling plaintiff's exceptions to the master's report, to wit:

"(1.) That the master erred in refusing to allow the $115.18 fines found by him to have been paid the association by the defendant, Kendall, as a credit on the amount he found due on the bond and mortgage of the association on 31st March, 1899.

"(2.) Because he erred in allowing defendant association an attorney's fee under the mortgage in this case as against the plaintiff, because the fee provided for in the mortgage only attaches when the sale is made and the money disbursed by the association, and not when the sale is made by the Court.

"(3.) Because under a proper statement the amount due the association on November 7th, 1900, is $2,720.09, and he erred in not so finding.

"2. Because his Honor erred in holding as against plaintiff that the clause in the mortgage providing that the final settlement be based upon the repayment of the advance, with interest thereon not to exceed the rate of eight per cent. per annum, applies 'only to a final settlement at the time of the maturity of the stock,' and not to the case at bar.

"3. Because his Honor erred in holding that as against plaintiff the amount due by Kendall on the loan is '$5,000, and interest and premiums at the rate of $50 per month for the time the loan has been running up to the time of the commencement of this action and the filing of the answer of the

association,' and in not holding that the amount due was $5,000, with interest at eight per cent. per annum from the date of the loan to the date of default, 1st April, 1899.

"4. Because his Honor erred in holding that August 1st, 1900, was the date for striking a balance; whereas, he should have held 31st March, 1899, the date of the default, the period for striking such balance.

"5. Because his Honor did not find as a fact that the moneys paid by Kendall to the association were applied to the association at the time of their payments in liquidation of his arrears in the order of their default, and the application so made and credited by the association paid all arrears in full to the 31st December, 1898.

"6. Because he erred in finding 'that the association prior to this proceeding waived any right it may have had under its contract with Kendall or under its by-laws to declare the entire debt due and payable and to treat him as in default,' there being no sufficient evidence to support such a finding of waiver.

"7. Because he erred in holding that the 'withdrawal value' of the stock ascertained by the method provided for in the by-laws of the association 'is the proper amount with which to credit the debt;' whereas, he should have held that $8.20, the undisputed book value, is the proper credit under the contract as against plaintiff.

"8. Because he erred in holding 'that the terms and provision of the mortgage in this case embody reasonable notice of an attorney's fee being chargeable in a proceeding such as the present one.'

"9. Because he erred in holding as against the plaintiff that the association has the right to charge fines upon default in payments, and as matter of fact fines charged are reasonable, and in charging the loan with $99.82 fines as accrued since default, and in allowing the said fines to be deducted from the amount of the loan payments.

"10. Because his Honor erred in charging the loan with $1,000 as interest and premium accrued since default;

whereas, he should have held that the contract was broken and the debt became due and payable on 31st March, 1899, and carried interest thereafter at six per cent.

"11. Because his Honor should have held that the debt became due three months after the default was shown by the entries of the association on the pass book of defendant, Kendall, to wit: 31st March, 1899, and that as against the plaintiff and subsequent *bona fide* lien creditors without notice, the amount due the association should be ascertained by adding to the face of the loan interest at the rate of eight per cent. per annum to the date of default, and from the sum so ascertained deducting the amount admittedly paid as dues, interest, premiums and fines, aggregating $3,575.18, and also the book value of $8.20 per share of said fifty shares of stock, and to the balance so ascertained adding interest at six per cent. to date of decree.

"12. Because his Honor erred in holding that at the date of the decree the sum of $4,796.87 is due the defendant association under its mortgage as against the plaintiff and other subsequent *bona fide* incumbrances, and ordering judgment for said amount; whereas, he should have held the amount due to be $2,733.72 at said date."

*Mr. Allen J. Green,* for appellant, cites: *Party invoking law contrary to that forum must prove it:* 45 S. C., 345; 25 S. C., 25. *Contract is not usurious:* 28 S. C., 534; 55 S. C., 119; 56 S. C., 280; 117 U. S., 567. *When shareholder of a B. & L. Assn. borrows money, he ceases to be a member:* 55 S. C., 117; 44 S. C., 121; 51 S. C., 429; 48 S. C., 78; 44 S. C., 121; 54 S. C., 222; 55 S. C., 316. *Interest at eight per cent. should only be charged until default in Kendall:* 28 S. C., 539; 48 S. C., 78; 55 S. C., 316. *Error to allow attorney's fees on Kendall mortgage:* 43 S. C., 72.

*Mr. Jno. P. Thomas, Jr.,* for Building and Loan Association, contra, cites: *This contract will be here inforced according to laws of Georgia:* 51 S. C., 37; 22 Stat., 485; 1 Chitty

on Con., 11 Am. ed., pp. 29, 30; 94 U. S., 214; 4 Ency., 2 ed., 1066. *As to amount due on contract:* 54 S. C., 222; 4 Ency., 1057; 49 S. C., 402. *Association under terms of its mortgage is entitled to attorney's fee here:* 19 Ency., note 2, *et seq.*; 31 S. C., 206; 33 S. C., 283; 15 Ency., 756-8; 1 Jones on Mtg., secs. 70 and 345.

December 5, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action of foreclosure brought by the plaintiffs, the holders of a junior mortgage and junior judgments against the defendant, F. D. Kendall, who was the mortgagor, and other defendants. The other defendants were incumbrancers, some prior and some subsequent to the plaintiffs' mortgage and judgments. The defendant, Georgia State Building and Loan Association, is the holder of a mortgage prior to the plaintiffs' mortgage and judgments. It is admitted that plaintiff had no notice other than disclosed by said defendant's mortgage as recorded of the terms of the contract between said Kendall and said association, and is a subsequent creditor and purchaser. The action was commenced on July 19th, 1900. The other facts are set forth in the decree of his Honor, the Circuit Judge, which omitting the formal portion thereof will be incorporated in the report of the case.

The plaintiffs appealed upon exceptions which will also be reported. The appellant's attorney in his argument states that it will not be necessary to consider the exceptions *seriatim,* as the eleventh exception is intended to embody the main contentions of the appellants, which exception is as follows:

"11. Because his Honor should have held that the debt became due three months after the default was shown by the entries of the association on the pass book of the defendant, Kendall, to wit: 31st March, 1899; and that as against the plaintiff and subsequent *bona fide* lien creditors without notice, the amount due the asso-

ciation should be ascertained by adding to the face of the loan interest at the rate of eight per cent. per annum to the date of default, and from the sum so ascertained deducting the amount admittedly paid as dues, interest, premiums and fines, aggregating $3,575.18; and also the book value of $8.20 per share of said fifty shares of stock, and to the balance so ascertained adding interest at six per cent. to date of decree." Conceding the fact that the monthly payments of dues, interest, premiums and fines when made by Dr. Kendall then amounted to more than the interest due on the bond and mortgage, which he executed in favor of the building and loan association, it does not follow that the plaintiffs are entitled to have the excess credited as payments on the principal of the said indebtedness. In the first place, the question of usury is not raised by the pleadings; and the plaintiffs are not, therefore, in a position to take advantage of such fact. *Bank* v. *Miller,* 39 S. C., 175; *Ryan* v. *B. & L. Association,* 50 S. C., 185. In the second place, the plea of usury, in a case like this, is personal to the mortgagor, and could not be interposed by the plaintiffs. *Allen* v. *Petty,* 58 S. C., 240; *Zeigler* v. *Maner,* 53 S. C., 115; *Turner* v. *B. & L. Association,* 47 S. C., 397. The act of 1898, 22 Stat., 749, relative to usury, is not applicable to this case.

The payments of the monthly instalments of dues, interest, premiums and fines were made in pursuance of stipulations in the contract between Dr. Kendall and the building and loan association, when he became a member thereof, and there is nothing in that agreement, nor any subsequent agreement, showing that the excess beyond interest at the rate of eight per cent. per annum, was to constitute payments upon the principal of the sum borrowed from said association. If the association received from Dr. Kendall sums of money which it had no right to collect, it was for him and not the plaintiff to recover the same. In the absence of a stipulation to that effect, such sums did not, by operation of law, become payments upon the principal of

his indebtedness to the association secured by the mortgage. To allow the appellants the benefit of said payments in excess of interest at the rate of eight per cent. per annum, would accord to them advantages to which they would not have been entitled, if they set up the plea of usury, and it had been sustained.    For, even if Dr. Kendall had interposed the plea of usury against the association, and it had appeared that the association took·from him interest in excess of the legal rate, this would not have converted the interest into a payment on the said principal.    This question has so recently been discussed in an elaborate opinion by Mr. Chief Justice McIver in the case of Butler *v.* Butler, just filed, that we deem it only necessary to refer to that case to sustain this proposition. Under this construction of the law, it is immaterial for us to consider whether the debt became due on the 31st March, 1899, as contended by the appellants.

It is also unnecessary to consider the question as to the book value of the shares of stock for which Dr. Kendall sub-·scribed, for the following additional reasons to what has been said :  When a person subscribes for shares of stock and becomes a member of a building and loan association, and thereafter borrows money from the association, pledging his shares of stock to secure its payment, he thereby practically ceases to be a member of the association. The new relation between him and the association is that of debtor and creditor, and it can only recover the principal sum loaned together with the legal rate of interest.    There are *dicta* in some of our cases contrary to this statement of the law, but after mature deliberation this Court has reached the conclusion just mentioned.

In so far as the right to attorney's fees is concerned, this Court is satisfied with the conclusions reached by the Circuit Judge for the reasons stated by him in decree.    These views practically dispose of all the exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.